UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHARRI LASHUN MILLINES,           :

     Plaintiff,                            :

                                   CIVIL ACTION NO.

v.                                              :

                                   1:11-CV-3061-MHS

RBC BANK (USA),                     :

     Defendant.                          :

## **ORDER**

Presently before the Court are defendant's motion for summary judgment, the Magistrate Judge's Report and Recommendation ("R&R"), recommending that the motion be denied, defendant's objections to the R&R and plaintiff's responses to defendant's objections. For the reasons set forth below, the Court overrules defendant's objections, adopts the R&R, and denies defendant's motion for summary judgment.


Background

This is a pregnancy discrimination case brought by plaintiff Sharri Lashun Millines against her former employer, RBC Bank (USA) ("RBC"). Plaintiff alleges that RBC unlawfully terminated her employment because of

her pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. She seeks back pay in the amount of $36,000, compensatory and nominal damages, attorneys' fees, and punitive damages. Defendant moved for summary judgment, and Magistrate Judge Scofield issued an R&R recommending that defendant's motion be denied on plaintiff's claims for sex discrimination and back pay.

As provided in the R&R, the facts for summary judgment are as follows:[1]

> In March of 2011, Ms. Millines was interviewed at RBC's Northlake branch for a position as a "senior relationship banker." Def's SMF ¶ 6 [Doc. 63-2]. According to Beth Dziczkowski, the Assistant Regional Manager, the two managers who interviewed Ms. Millines, one of whom was Lynn Ryan, determined that she was not qualified for the senior relationship banking position, but they both recommended her to Ms. Dziczkowski for a position as a "floating relationship banker." Dziczkowski Dep. at 7:8-25 [Doc. 67-7]; see also Millines Dep. at 17:5-20 [Doc. 67-12]. A floating relationship banker does not report to a single branch location, but rather "floats" among different branches at different times, "help[ing] the branch in any way possible." See Dziczkowski Dep. at 44:13-24 [Doc. 67-7].

---

[1] As explained in the R&R, unless otherwise noted, this overview of the facts was taken from those facts in the parties' statements of material facts ("SMF") that have not been disputed. Where there is a factual dispute or a need for clarification based on defendant's objections, the Court will address that fact in its analysis.

2

On March 17, 2011, Ms. Dziczkowski interviewed Ms. Millines for the floating relationship banker position. Def's SMF ¶ 9 [Doc. 63-2]. Ms. Millines was pregnant on the day of her interview with Ms. Dziczkowski but did not know it at the time. Millines Dep. at 19:4-7, 20:3-5 [Doc. 67-12]. Ms. Dziczkowski, herself, was also pregnant at this time. Def's SMF ¶ 10 [Doc. 63-2]. Ms. Dziczkowski explained the role of a floating relationship banker, and, shortly after the interview, Ms. Millines was offered the job. Id. ¶¶ 12-13.

On April 12, 2011, Ms. Millines arrived for her first day of work with RBC at 9:30 in the morning. Id. ¶¶ 14, 17. Later that morning, Ms. Millines asked Ms. Dziczkowski, her direct supervisor, for permission to leave work early that day to attend a doctor's appointment at 3:30 in the afternoon. Id. ¶ 18. She told Ms. Dziczkowski that the purpose of the appointment was to find out if she was pregnant. Id. ¶ 19. Permission was granted, and Ms. Dziczkowski did not indicate that she had any problem with Ms. Millines leaving early that day, even though it was her first day of work on a new job. Id. ¶ 20; see also Millines Dep. at 37:20-25 [Doc. 67-12].

Later that same day, Ms. Millines went to lunch with her friend and co-worker, Christopher Flenory, for approximately one hour and fifteen minutes. Def's SMF ¶¶ 21, 22 [Doc. 63-2]. This was fifteen minutes beyond the one-hour lunch period allowed. Id. ¶ 23. Mr. Flenory was also late returning from lunch with her. Millines Dep. at 41:23-42:1 [Doc. 67-12]. About an hour and ten minutes before her doctor's appointment, Ms. Millines left work and did not return for the rest of the day. Def's SMF ¶¶ 24-25 [Doc. 63-2].

AO 72A
(Rev.8/82)

The following facts are disputed.[2] On April 13, 2011, Rosabelle Downs, the Branch Manager, claimed she saw Ms. Millines slouching at her desk with her head on her hand. Downs Dep. at 26:15-20 [Doc. 67-11]. Ms. Downs testified that Ms. Millines's back was towards her, so she could not see whether Ms. Millines's eyes were closed. Id. at 26:15, 26:23-27:3. Yet Ms. Downs claimed that when she walked into the office and asked Ms. Millines if she was okay, Ms. Millines stood up as if she had been unaware of Ms. Downs's presence. Id. at 27:7-12. Later that same day, Ms. Downs reported to Ms. Dziczkowski that she had seen Ms. Millines asleep at her desk. Id. at 32:6-16; Dziczkowski Dep. at 24:10-23 [Doc. 67-7].

Ms. Dziczkowski testified by deposition that the next day, on April 14, 2011, she checked on Ms. Millines during her computer-based training. Dziczkowski Dep. at 22:3-11 [Doc. 67-7]. Ms. Dziczkowski claimed that she personally saw Ms. Millines sleeping in her chair, in a slouched position with her eyes closed and her head resting against the back of the chair. Id. at 21:23-22:23, 23:10-12. According to Ms. Dziczkowski, she asked Ms. Millines if she was okay, and Ms. Millines responded that she had been doing "a lot of reading." Id. at 22:10-13.

On April 15, 2011, according to her deposition testimony, Ms. Downs received phone calls from someone in her office claiming that Ms. Millines had taken a three-hour personal call on her cell phone. Downs Dep. at 35:5-36:2 [Doc. 67-11]; see also Pl's Exh. B [Doc. 67-14]. Ms. Downs could not recall who had reported this to her, or even whether it had been a man or a woman, but she in turn relayed the information to Ms.

---

[2] Defendant interprets this statement to mean that the facts from this point forward are disputed. Defendant objects and asserts that several of the facts that follow are not in dispute. The Court finds that defendant has read this sentence too broadly, and instead, that Judge Scofield intended to explain the dispute about whether plaintiff was sleeping or slouching and took a personal call.

4

Dziczkowski because she was Ms. Millines's direct supervisor. Downs Dep. at 35:15-36:7, 36:17-22 [Doc. 67-11].

Three days later, on April 18, 2011, Ms. Dziczkowski claimed that she saw Ms. Millines "slouching" in front of a client. Dziczkowski Dep. at 34:4-8 [Doc. 67-7]. According to Ms. Dziczkowski's testimony, Ms. Millines was "shadowing" Shannon Wright, the senior relationship banker, at the time. Id. at 34:10-11. Ms. Dziczkowski claimed that, while Ms. Wright was assisting a client, Ms. Millines sat next to Ms. Wright and watched her use the computer, all while leaning on her desk and resting her head on her arm. Id. at 34:4-14.

Ms. Millines denies the above reports that she fell asleep, slouched, or took personal calls at work. To support this, she has submitted an affidavit wherein she attests that she never fell asleep, slouched, or took a three-hour personal call while working for RBC. Millines Aff. ¶¶ 1-2, 5-6 [Doc. 67-6]. Ms. Wright has also testified that she never saw Ms. Millines fall asleep, slouch, or rest her head on the desk while working for RBC, in particular, not even during the time Ms. Millines was "shadowing" her. Wright Dep. at 160:12-21 [Doc. 68] [footnote omitted]. Ms. Wright also testified that one time she "stood up" to Ms. Downs when the latter claimed to have seen Ms. Millines sleeping in Ms. Wright's presence. Id. at 61:22-65:18.

Ms. Millines testified that, on the morning of April 18, 2011, the service manager, Danielle Teal, "blurt[ed] out" in front of Ms. Wright and Mr. Flenory that Ms. Millines should not be drinking any "detox drinks" because she was pregnant. Id. ¶ 18. Ms. Millines testified that she had not, by that point, told any co-worker that she was pregnant other than Ms. Dziczkowski, and that she had wanted her pregnancy to be kept confidential. Id.

On April 18 or 19, 2011, Ms. Dziczkowski and Ms. Downs had a discussion with Ms. Millines in Ms. Dziczkowski's office. Def's SMF ¶ 40 [Doc. 63-2]. According to Ms. Dziczkowski, they

discussed the recent reports that Ms. Millines had been sleeping on the job, taking personal phone calls and three-hour breaks, and acting unprofessionally in front of clients. Dziczkowski Dep. at 35:12-17 [Doc. 67-7]. Ms. Millines, however, asserts that they did not discuss these topics. Millines Aff. ¶¶ 8, 11-12 [Doc. 67-6]. Instead, Ms. Millines asserts that they discussed the perception that she was not "enthused" about her job, that she displayed "negative body language," and that she behaved in an unfriendly manner. Millines Dep. at 37:6-10 [Doc. 67-12].

On April 20, 2011, Ms. Dziczkowski contacted RBC's human resources department and made the recommendation that Ms. Millines be terminated. Def's SMF ¶ 48 [Doc. 63-2]. Ms. Dziczkowski also prepared a Dismissal Summary Request that set forth a narrative of the basis for the request. Id. ¶ 49; Pl's Exh. B [Doc. 67-14]. This narrative recounted, among other things, one instance of her returning late from lunch on April 12, 2011; one instance of recording an eight-hour work day, also on April 12, 2011, when she had not been at work for eight hours; five instances of sleeping on the job on April 13 and 14, 2011; one instance of taking a personal call on her cell phone in the break room for about three hours on April 15, 2011; and one instance of slouching and resting her head on her hand in front of a client on April 18, 2011. Pl's Exh. B [Doc. 67-14]. The Dismissal Summary Request, dated April 20, 2011, characterized the reason for the recommended dismissal as Ms. Millines's "[f]ailure to meet minimum expectations for the job." Id.

On April 26, 2011, Ms. Millines sent an email to Ms. Dziczkowski informing her that she had been bleeding and needed to make an emergency doctor's appointment for the next day. Millines Aff. ¶ 25 [Doc. 67-6]. Ms. Dziczkowski approved her going to the appointment. Id.

On April 27, 2011, after Ms. Millines returned from her doctor's appointment, Ms. Dziczkowski and Ms. Downs met with her, went over the Dismissal Summary Request, and terminated

her employment. Def's SMF ¶¶ 50, 51 [Doc. 63-2]; Millines Aff. ¶ 26 [Doc. 67-6]. April 27, 2011, was Ms. Millines's last day of employment with RBC. Def's SMF ¶ 50. RBC has not hired anyone to replace Ms. Millines. Id. ¶ 53.

After she was terminated, Ms. Millines submitted several job applications to a previous employer, Wells Fargo. Id. ¶ 55. She did not apply to any other employer except Wells Fargo. Id. ¶¶ 55, 57 [footnote omitted]. She was eventually hired by Wells Fargo and started her new job on August 23, 2012, nearly sixteen months after her termination from RBC and nine months after her child was born. Millines Aff. ¶¶ 13-14 [Doc. 67-6]; Millines Dep. at 86:10-11 [Doc. 67-12]. . . .

On May 17, 2011, Ms. Millines filed a complaint of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). [Doc. 3 ¶ 25]. The EEOC issued a right to sue letter on July 1, 2011. [Id. ¶ 26]. On September 12, 2011, Ms. Millines filed an application to proceed with the instant action in forma pauperis, [Doc. 1], which this Court granted. [Doc. 2].

R&R at 2-9.

Discussion

Defendant has objected to certain portions of the R&R. A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

7

objection is made." 28 U.S.C. § 636(b)(1)(C).  The Court reviews the other portions of the R&R to which no objection has been made for plain error. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Court has reviewed the portions of the R&R to which defendant has not objected for plain error and finds that the R&R is correct.

Turning next to defendant's objections, with respect to discrimination, first defendant objects to plaintiff's affidavit.  Defendant asserts that plaintiff has made only unsupported conclusory allegations that she did not slouch, fall asleep, or take personal calls during the work day in her affidavit, and therefore, the Court should disregard her affidavit.  The Court disagrees.  As plaintiff points out, defendant never raised this argument before Judge Scofield, and the Court need not consider that argument here for the first time.  Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge). Furthermore, even considering defendant's argument, the Court finds that it is without merit because plaintiff has sufficiently alleged in her affidavit

8

that while working for RBC, she "did not fall asleep or slouch" and that she "did not talk on the cellphone for three or more hours."  Pl.'s Aff. ¶¶ 1-2.

Second, defendant objects to the standard used by the R&R to find that plaintiff has presented enough circumstantial evidence of discrimination to survive summary judgment on plaintiff's sex discrimination claim. The R&R set forth the correct law related to pregnancy discrimination as follows:

> Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual[,] with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act, codified at 42 U.S.C. § 2000e(k), provides that the prohibition against discrimination "because of sex" or "on the basis of sex" includes discrimination on the basis of "pregnancy, childbirth, or related medical conditions." § 2000e(k). "The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000) (per curiam) (citing Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312-13 (11th Cir. 1994)).

> Under Title VII, the plaintiff bears the ultimate burden of persuading the factfinder that the defendant intentionally discriminated against her. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093 (1981). A plaintiff may meet this burden by presenting either direct or circumstantial evidence of discriminatory intent. Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1555-56 (11th Cir. 1995). If, as in this case, the plaintiff does not contend that she

has direct evidence of discriminatory intent, the plaintiff may present circumstantial evidence permitting an inference of intentional discrimination. Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1320 (11th Cir. 2012); Armstrong, 33 F.3d at 1313.

Generally, a plaintiff presents a disparate treatment claim supported by circumstantial evidence by employing the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and refined in Burdine, 450 U.S. at 252-53, 101 S. Ct. at 1093. If the plaintiff establishes a prima facie case of discrimination, she is entitled to a rebuttable presumption of discriminatory intent on the part of the defendant. U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714, 103 S. Ct. 1478, 1481 (1983); Armstrong, 33 F.3d at 1313. The burden of production then shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for terminating the plaintiff. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam); Armstrong, 33 F.3d at 1313. If the defendant makes this showing, the presumption of discriminatory intent vanishes and the plaintiff must show that the proffered reason is a mere pretext for discrimination. Holifield, 115 F.3d at 1565; Armstrong, 33 F.3d at 1313-14.

A plaintiff may also, however, show discriminatory intent without relying on the McDonnell Douglas framework, by "presenting circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Hamilton, 680 F.3d at 1320 (quoting Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)) (brackets omitted); see also Hubbard v. Meritage Homes of Fla., Inc., No. 12-15172, 2013 WL 2359065, at *4 (11th Cir. May 30, 2013). "A triable issue of fact exists if the record, viewed in the light most favorable to the plaintiff, presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination." Hamilton, 680 F.3d at 1320 (citing Smith, 644 F.3d at 1328). "Whatever form it takes, if the circumstantial evidence is sufficient to raise 'a reasonable

10

inference that the employer discriminated against the plaintiff, summary judgment is improper.'" <u>Chapter 7 Trustee v. Gate Gourmet, Inc.</u>, 683 F.3d 1249, 1256 (11th Cir. 2012) (quoting <u>Smith</u>, 644 F.3d at 1328).[3]

R&R at 11-13.

The R&R found that plaintiff had failed to establish a prima facie case under the traditional <u>McDonnell Douglas</u> framework because plaintiff could not point to any similarly situated comparators.  Defendant does not object to this conclusion.

Instead, the R&R found that the "record contain[ed] sufficient non-comparator circumstantial evidence to cast serious doubt upon the good faith of RBC's proffered reasons for Ms. Millines's termination, creating a substantial issue as to whether these reasons were merely fabricated as a pretext for discrimination."  R&R at 31.  Defendant objects.

_____

[3] The Court will refer to this method for presenting a triable issue of an employer's discriminatory intent based on circumstantial evidence as the "alternative approach."

11

Defendant argues that the circumstantial evidence in this case falls far short of the evidence in other cases where a triable issue of discriminatory intent was found under the alternative approach. Defendant argues that an overwhelming amount of circumstantial evidence is necessary to meet the standard under this alternative approach and that plaintiff has failed to present such evidence. Further, defendant argues that the R&R's analysis veers off course by discussing the alleged pretext behind defendant's reasons for terminating plaintiff. Defendant contends that this pretext analysis is not appropriate under the alternative approach.

After a de novo review of the record, the Court agrees with the R&R that plaintiff has presented enough circumstantial evidence under the alternative approach to raise a reasonable inference for a jury to find that RBC discriminated against plaintiff. The circumstantial evidence found sufficient by the R&R was (1) temporal proximity and (2) considerable factual disputes to question whether plaintiff committed the charges for which she was fired.

As for temporal proximity, the R&R found that this was a case

12

where the plaintiff informed her boss that she might be pregnant
on her first day of work, later confirmed that she was pregnant,
and took leave from work for at least two doctor's appointments
within her first two weeks of work, before she was fired fifteen
days after her start date. "[A] close temporal proximity between
two events may support a finding of a causal connection between
those two events." Wascura v. City of S. Miami, 257 F.3d 1238,
1244-45 (11th Cir. 2001); see also Rosales v. The Keyes Co., No.
06-20471-CIV-UNGARO-BENAGES, 2007 WL 29245, at *5 (S.D.
Fla. Jan. 3, 2007) (finding plaintiff's termination within weeks of
her absence for a pregnancy-related medical issue to be evidence
of pretext).

R&R at 20-21.  Defendant has not objected to this finding, and the Court

agrees with the R&R that this close temporal proximity provides some

evidence of pretext.[4]


Next, the Court agrees with the R&R that there are several factual

disputes which raise the question of whether plaintiff committed the

terminable offenses for which she was fired.  RBC claims that plaintiff was

terminated for "'(1) sleeping on the job; (2) unprofessional behavior in front

---

[4] Contrary to defendant's objections that the R&R engaged in an erroneous
pretext analysis, circumstantial evidence which supports the inference that the
employer's proffered reasons for termination were pretext for discrimination are
relevant under the alternative approach.  See Smith, 644 F.3d at 1341, 1344
(finding circumstantial evidence under the alternative approach sufficient to
withstand summary judgment, including evidence that suggested that the
employer's justification for firing the employee was a pretext for racial animus).

13

of clients and other employees; and (3) not doing the job she was hired to do.' Def's SMF ¶ 52 [Doc. 63-2]; RBC's 30(b)(6) Dep. at 9:21-10:5 [Doc. 67-8]." R&R at 19.[5]  Furthermore, the Dismissal Summary Request on which RBC first stated its reasons for plaintiff's termination includes the following misconduct by plaintiff: "falling asleep on the job, slouching in front of a client, talking on her personal cell phone in the break room for three hours, and returning late from lunch. See Pl's Exh. B [Doc. 67-14]." R&R at 20.

The factual disputes center around whether plaintiff (1) was sleeping or slouching and (2) took a personal phone call for three hours. The first instances of plaintiff sleeping or slouching were witnessed by Ms. Downs on on April 13.  Defendant contends in its objections that the first time Ms. Downs saw Ms. Millines slouching on April 13, plaintiff was at her desk with her head on her hand and her back towards Ms. Downs.  Ms. Downs claimed that when she walked into the office and asked Ms. Millines if she was okay, Ms. Millines stood up as if she had been unaware of Ms. Downs's presence. However, Ms. Downs also testified that she could not see if plaintiff's eyes

---

[5] The Court agrees with the R&R that the two latter proffered bases are vague and general, and they do not state legitimate nondiscriminatory reasons with specificity.

14

were closed. Ms. Downs said that she saw plaintiff leaning with her head in her hand a second time later that day but that her back was towards Ms. Downs and she could not see if plaintiff's eyes were open. She did not approach plaintiff for a second time. On the other hand, plaintiff states in her affidavit that she never slept or slouched in her chair while at work for RBC.

According to defendant, the next instance of plaintiff sleeping occurred the following day on April 14. Ms. Dziczkowski contends that she checked on plaintiff during her computer based training and that she personally saw plaintiff sleeping in her chair, in a slouched position with her eyes closed and her head resting against the back of the chair. According to Ms. Dziczkowski, she asked Ms. Millines if she was okay, and Ms. Millines responded that she had been doing "a lot of reading." Dziczkowski Dep. at 22:10-13. Additionally, defendant asserts that Ms. Downs told Ms. Dziczkowski that plaintiff was sleeping on the job on April 14 and that Christopher Flenory observed plaintiff sleeping or dozing off at work in the lobby during training on April 14. However, once again, plaintiff in her affidavit denies ever sleeping or slouching. Furthermore, Mr. Flenory has submitted an affidavit

in which he states that he never saw plaintiff sleeping or slouching on April 14.[6]

On April 17 or 18, plaintiff was shadowing fellow employee Ms. Wright. According to defendant, Ms. Dziczkowski claimed that she saw Ms. Millines "slouching" in front of a client during the time she was shadowing Ms. Wright. Ms. Dziczkowski claimed that, while Ms. Wright was assisting a client, Ms. Millines sat next to Ms. Wright and watched her use the computer, all while leaning on her desk and resting her head on her arm. Additionally, Ms. Downs reported to Ms. Wright that she had seen plaintiff fall asleep while Ms. Wright stepped out of the office during her training of plaintiff.[7] Once again, plaintiff denies ever sleeping or slouching. Additionally, Ms. Wright testified that it would have been impossible for plaintiff to have fallen

---

[6] Contrary to defendant's objections, plaintiff was not working in an office that day but in the main lobby, where she could have been seen by the tellers, including Mr. Flenory.

[7] It is not clear if plaintiff was training with Ms. Wright on both April 17 and 18. According to Ms. Wright's testimony, Ms. Downs told Ms. Wright on April 18 that she saw plaintiff dozing off when plaintiff was shadowing Ms. Wright the day before. According to Ms. Dziczkowski, plaintiff was shadowing Ms. Wright on April 18.

AO 72A
(Rev.8/82)

asleep or dozed off because plaintiff was assisting Ms. Wright with a client and they were interacting with a client the entire time.

The other instance of plaintiff sleeping was that Ms. Dziczkowski stated that Ms. Teal had discovered plaintiff sleeping in a break room. However, Ms. Teal testified at her deposition that she did not discover plaintiff and never saw her sleeping.  Additionally, Ms. Teal said that Ms. Downs had found plaintiff.  Yet, Ms. Downs testified that she did not find plaintiff in the break room and had no memory of telling Ms. Teal that plaintiff was asleep.

Finally, with regard to the phone call, defendant contends that on April 15 Ms. Downs received phone calls from someone in her office claiming that plaintiff had taken a three-hour personal call on her cell phone.  Yet, Ms. Downs further testified that she did not personally witness the phone call and she could not identify, even by gender, who reported to her that this occurred. Plaintiff denies that she ever talked on a cell phone for three or more hours while at work for RBC.

17

Even if plaintiff's affidavit was excluded, as defendant requests, there are still reports from Ms. Teal, Ms. Wright, Ms. Downs and Mr. Flenory which contradict any allegations of plaintiff sleeping, slouching, or taking phone calls. Viewing the evidence in the light most favorable to plaintiff, a jury could reasonably conclude that plaintiff was not sleeping or slouching during work and did not take a three-hour break for a personal call, and therefore, that she did not commit the offenses for which she was terminated. This is sufficient circumstantial evidence to cast doubt on the reasons given for plaintiff's termination and instead for a jury to find that the reasons were pretext for discrimination. See Damon v. Fleming Supermarkets Of Florida, Inc., 196 F.3d 1354, 1363 (11th Cir. 1999) (allegations of an employee violating a work rule are arguably pretextual when the employee submits evidence that she did not violate the cited work rule).

In its objections, defendant argues that these factual disputes are not evidence of pretext because Ms. Dziczkowski held a subjective belief that the reports of plaintiff sleeping, slouching, or talking on her phone were true. Therefore, the Court should grant summary judgment for defendant because Ms. Dziczkowski believed the reasons for plaintiff's termination to be true

18

and plaintiff has failed to show that Ms. Dziczkowski had any wrongful intent or lacked good faith.

The Court agrees with the R&R that plaintiff has sufficiently challenged Ms. Dziczkowski's credibility such that a jury could find that she did not hold a subjective belief that plaintiff had committed the terminable offenses. As explained above, through the reports of other witnesses as well as her own affidavit, plaintiff has shown sufficient reasons to question Ms. Dziczkowski's good faith belief of plaintiff slouching or sleeping or taking a phone call. Credibility determinations are for the jury, and plaintiff has presented enough evidence from which a jury could find that Ms. Dziczkowski did not subjectively believe that plaintiff had committed the terminable offenses. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Finally, defendant argues that the R&R overlooked the relevant fact that Ms. Dziczkowski was pregnant at the time she hired and fired plaintiff. Defendant argues that this points the circumstantial evidence in defendant's favor and away from an inference of discriminatory intent. The Court agrees with the R&R's analysis and reasoning on this point. See R&R at 28-30. It

19

is up to a jury to decide whether Ms. Dziczkowski, as a pregnant woman, was less likely to discriminate against plaintiff as a pregnant employee. <u>See Anderson</u>, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").  Additionally, although one may draw a permissible inference that an employer's justification for terminating an employee is not pretextual when a single decisionmaker both hires and fires an employee, <u>Williams v. Vitro Servs. Corp.</u>, 144 F.3d 1438, 1443 (11th Cir. 1998), Ms. Dziczkowski did not know that plaintiff was pregnant when she hired her.  Therefore, an inference of pretext can still be found in this case because plaintiff's position changed from a non-pregnant employee to a pregnant employee.

In addition to slouching or sleeping during work and the three-hour call, the other reason given for plaintiff's termination was plaintiff's late return from lunch.  The R&R noted that plaintiff admitted that she returned from lunch fifteen minutes late on her first day of work.  However, no action was taken against Mr. Flenory from the same infraction. Therefore, the R&R concluded that "it could hardly be said that this infraction alone could be

justification for termination." R&R at 30-31. Defendant has not objected, and the Court agrees that this could be considered further circumstantial evidence of pretext. See Damon, 196 F.3d at 1363 (allegations of an employee violating a work rule are arguably pretextual when the employee violated the rule but other employees outside the protected class engaged in similar acts and were not similarly treated).

In sum, viewing the evidence in the light most favorable to plaintiff, the Court finds that there is enough circumstantial evidence in the record to raise a reasonable inference of discrimination, including the temporal proximity of plaintiff's termination to her disclosure of her pregnancy and time away from work due to her pregnancy, the factual disputes about the reasons given for plaintiff's termination, and the credibility of the good faith beliefs of the decisionmaker for the reasons for termination. Defendant argues that the circumstantial evidence does not come close to the evidence found sufficient in other cases where the courts have used this alternative approach. The facts in this case are different than in previous cases, and the circumstantial evidence sufficient under this alternative approach will vary from case to case. Plaintiff must show that there is "a convincing mosaic of circumstantial

evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith, 644 F.3d at 1328. The Court agrees with the R&R that plaintiff has met this burden, and therefore, the Court denies defendant's motion for summary judgment with respect to plaintiff's sex discrimination claim.

Defendant also objects to the R&R's recommendation to deny summary judgment on plaintiff's claim for back pay. Defendant contends that the Magistrate Judge ignored or misapplied the evidence in the record regarding whether plaintiff mitigated her damages by diligently seeking substantially similar employment. See Lathem v. Dep't of Children & Youth Servs., 172 F.3d 786, 794 (11th Cir. 1999). The Court has conducted a de novo review of the evidence submitted by the parties and agrees with the R&R that the parties have not submitted evidence substantiating the number of job applications plaintiff submitted or the dates of those applications.[8] The

_____

[8] Defendant relies repeatedly on Plaintiff's Response to Defendant's Interrogatory Number 13 for the number of job applications and the dates that plaintiff submitted applications. However, this interrogatory as submitted by defendant on summary judgment does not support defendant's position. See Doc. #63-5 at 76. Plaintiff's deposition testimony and her affidavit also do not give specific information about the number of job applications she made and when she
(continued...)

parties dispute how many job applications plaintiff submitted, and without the numbers or dates to support the parties' respective factual claims, the Court agrees with the R&R that the issue of whether plaintiff mitigated her damages should be left for trial.

Accordingly, the Court overrules defendant's objections and adopts the R&R. The R&R ordered that should the district court adopt the R&R in whole or in part, leaving issues to be tried, the parties were to file a proposed consolidated pretrial order. See R&R at 35. However, pursuant to Local Rule 16.7, the Court's review of this case has led it to conclude that mediation may provide savings in time and costs to the litigants without sacrificing the quality of justice. Therefore, the Court refers this case to mediation before the next available Magistrate Judge and stays all proceedings pending completion of mediation. If mediation is unsuccessful, the parties must then comply with the Magistrate Judge's order to file a proposed consolidated pretrial order.

---

(...continued)
applied.

23

<u>Conclusion</u>

For the foregoing reasons, the Court GRANTS defendant's motion for leave to exceed the page limits [#77]; OVERRULES defendant's objections [#76]; ADOPTS the R&R [#72]; DENIES defendant's motion for summary judgment [#63]; and REFERS this case to mediation before the next available Magistrate Judge. All proceedings are STAYED pending the completion of mediation.

IT IS SO ORDERED, this 19th day of September, 2013.

Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

24